The BRUSS COMPANY, an Illinois corporation, and Hinckley & Schmitt, Inc., an Illinois corporation, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

ALLNET COMMUNICATION SERVICES, INC., an Illinois corporation, Michael P. Richer, Melvyn J. Goodman, Robert F. Downing, and Julia A. Vinson, Defendants.

No. 84 C 3611.

United States District Court, N.D. Illinois, E.D.

April 4, 1985.

Raymond J. Kelly, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., James S. Kurz, Susan M. Jenkins, Jenkins & Kurz, Washington, D.C., for plaintiffs.

Michael W. Coffield, Gregory A. Friedman, Michael D. McCormick, Coffield, Ungaretti, Harris & Slavin, Robert E. Neiman, Neiman & Grais, Chicago, Ill., for Allnet Communication Services, Inc.

William J. Harte, Chicago, Ill., for defendants.

James E. Dahl, James E. Dahl & Associates, Chicago, Ill., for Goodman and Richer.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This action is before the court on joint motion of all defendants to dismiss plaintiffs' Second Amended Complaint. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### Facts

Defendant Allnet Communication Services, Inc. ("Allnet") is a provider of long distance telephone service. It is subject to the Federal Communications Act of 1934, 47 U.S.C. § 201 *et seq.*, and to the rules, regulations, directions and orders of the Federal Communications Commission ("FCC"). The individual defendants, Michael P. Richer, Melvyn J. Goodman, Rob-

ert F. Downing, and Julia A. Vinson, are executives, officers and/or directors of Allnet. Plaintiffs, The Bruss Company and Hinckley & Schmitt, Inc., are both former subscribers to Allnet's long distance telephone service.

Plaintiffs have sued under various legal theories, on behalf of themselves and others similarly situated, for alleged overcharges by Allnet for long distance service. In Counts I and II, plaintiffs allege alternate violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Count III alleges a cause of action under the Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 201 *et seq.* The remaining counts allege state law claims for common law fraud (Count IV), violations of the Uniform Deceptive Trade Practices Act, Ill. Rev.Stat. ch. 121½, § 311 *et seq.* (Count V), and violations of the Illinois Consumer Fraud & Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 261 *et seq.* (Count VI).

All six counts are based on the same principal allegations of overcharge and fraud. Plaintiffs essentially allege that defendants charged plaintiffs and other long distance subscribers rates in excess of the tariffs filed with the FCC. These overcharges were allegedly accomplished in three ways: (1) by inflating the distance in miles for "800 service" calls, for which charges are based on the distance between the network switching center and the place called; (2) by inflating the mileage component for normal calls placed through new switching centers, and (3) by billing calls to cities in the Allnet systems, for which lower rates were to be charged, at the higher rates for cities not within the Allnet system. Plaintiffs allege that all the defendants conspired together to conceive, and then implemented, the overcharge system as a scheme to defraud class members.

### Motion to Dismiss

The defendants have moved to dismiss all six counts of the complaint on various grounds. In considering a Rule 12(b)(6)

motion to dismiss, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto,* 405 U.S. 319, 323, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all material facts well pleaded in the complaint, and must make all reasonable inferences in the light most favorable to the plaintiff. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976). The court need not strain, however, to find inferences available to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir. 1977).

### Counts I and II—RICO

In their original motion to dismiss, filed before the 7th Circuit Court of Appeals issued its decision in *Haroco, Inc. v. American National Bank & Trust Company,* 747 F.2d 384 (7th Cir.1984), defendants argued that plaintiffs' RICO counts were deficient for failure to allege a "RICO injury." The *Haroco* decision squarely rejected any requirement of alleging a "RICO injury," and defendants have since abandoned this argument.

Defendants also advance a number of other arguments for dismissal of the RICO counts. They assert that plaintiffs have failed to plead the fraud alleged against the individual defendants with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that:

> In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

This requirement of greater specificity is intended to protect defendants from the harm that results from charges of serious wrongdoing, and to give the defendants

notice of the conduct complained of. *D & G Enterprises v. Continental Illinois National Bank*, 574 F.Supp. 263, 266–67 (N.D. Ill.1983); *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 419 (S.D.N.Y.1978), citing *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2nd Cir.1975). As the court in *D & G Enterprises* noted, complaints alleging fraud should seek redress for a wrong, rather than attempt to discover unknown wrongs. 574 F.Supp. at 266, citing *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *affirmed*, 636 F.2d 1201 (2nd Cir.1980).

■ However, Rule 9(b) must be read together with Rule 8, which requires a plain and concise statement of the claim. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975). Therefore, although a plaintiff must allege with particularity the specific acts comprising the fraud, he need not plead detailed evidentiary matters. The allegations should describe the circumstances constituting the fraud, including the time, place and contents of the false representations, as well as the identity of the party making the misrepresentation. *D & G Enterprises*, 574 F.Supp. at 267.

■ Moreover, when there are allegations of a fraudulent scheme with multiple defendants, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against each particular defendant. *Id.; Adair v. Hunt International Resources*, 526 F.Supp. 736, 744 (N.D.Ill.1981); *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1278–79 (N.D.Ill.1976).

■ In this case, plaintiffs have made specific allegations of the manner in which the alleged fraud or overcharges were carried out by Allnet as a corporation. As noted above, the complaint specifies the three ways in which Allnet allegedly overcharged its customers. Viewing these allegations in light of the standards under Rules 9(b) and 8 discussed above, the court finds that these allegations plead fraud with sufficient particularity with respect to Allnet. However, with respect to the individual defendants, the complaint fails to include any allegation as to how any individual defendant participated in the fraud. The complaint merely alleges that Allnet and the individual defendants schemed to defraud customers by overcharging them, and then describes the types of overcharges. Nowhere does the complaint specify any act by any particular defendant through which the fraud was carried out. The individual defendants are merely "lumped" together with Allnet and accused of performing the same fraudulent acts. Under Rule 9(b) and the cases discussed above, these allegations are clearly insufficient to support claims of fraud against the individual defendants.

■ Plaintiffs' response to their failure to plead any individual acts by individual defendants is that defendants have destroyed documents which would support their claim of fraud, and otherwise hindered detection of their wrongdoing. These unsupported allegations are insufficient to withstand scrutiny under Rule 9(b). As the court in *D & G Enterprises* noted, plaintiff should not make serious accusations of fraud until they have ascertained what wrongs have been committed; fraud should not be alleged in the hope of later discovering some. 574 F.Supp. at 266.

■ The Seventh Circuit has relaxed the requirement of pleading fraud with particularity in cases where matters are particularly within the knowledge of the opposing party. In these circumstances, allegations based "on information and belief" may be sufficient, but the allegations must be accompanied by a statement of facts upon which the belief is founded. *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir.1962); *D & G Enterprises*, 574 F.Supp. at 267. Thus, even when particular facts are solely within the knowledge of the defendant, the plaintiff must still make sufficient particular allegations based "on information and belief," and submit a statement of the facts upon which the belief is based.

In this case, plaintiffs have failed to make any particular allegations of any individual defendant's conduct, even "on infor-

mation and belief," and plaintiff has not, and apparently is unable to, proffer any statement of facts on which such allegations could be based. Plaintiffs have therefore failed to meet the standard of Rule 9(b) for pleading fraud against the individual defendants. Accordingly, plaintiffs' claims against the individual defendants in Counts I and II must be dismissed.

In Count I, plaintiffs allege that Allnet and all the individual defendants together defrauded plaintiffs in violation of §§ 1962(a), (b), (c) and (d). In Count II, plaintiffs alternatively allege that only the individual defendants, and not Allnet, defrauded plaintiffs in violation of § 1962(a), (b), (c) and (d). Since the allegations against all the individual defendants are fatally defective, Count II must be dismissed in its entirety. However, the analysis with respect to Count I is more complex.

Although the claims against the individual defendants in Count I must be dismissed, Allnet remains as a "person" alleged to have violated § 1962(a), (b), (c) and (d). The court must therefore address another argument raised by defendants: whether Allnet can be both the person who violates RICO and the enterprise through which the violation of RICO has been carried out.

The Seventh Circuit Court of Appeals has recently addressed this issue in *Haroco, Inc. v. American National Bank*, 747 F.2d 384 (7th Cir.1984). In *Haroco*, the court considered both the statutory language and the legislative intent of section 1962(a) and (c). Section 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The court first noted that a corporation satisfies the definitions of both a "person" and an "enterprise" under section 1961. 747 F.2d at 400. The court then considered

whether the act nevertheless requires that the person and the enterprise be separate entities. Focusing on the language of § 1962(c), the court observed that the provision requires that the liable person be "employed by or associated with any enterprise" which affects commerce. The court reasoned that the use of the terms "employed by" and "associated with" appears to contemplate that the person be distinct from the enterprise. The court therefore concluded that, for an action under § 1962(c), the "person" alleged to have violated the provision must be an entity separate and distinct from the "enterprise" through which commerce was affected. *Id.*

Employing the same analysis to § 1962(a), however, the court reached the opposite result. Section 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

Once again, the court focused on the language of subsection (a), and determined that, in contrast to subsection (c), subsection (a) does not contain any language requiring that the "person" and the "enterprise" be distinct. It does not require that the person be employed by or associated with, the enterprise, or contain any other language implying that the two entities must be distinct. The court also emphasized that subsection (a) prohibits the use of income from racketeering in the "operation" of the enterprise, implying that the legislature must have envisioned a corporation using the proceeds of racketeering activity in its own operations. The court therefore concluded that, in actions under

subsection (a), the person liable and the enterprise may be the same entity, *i.e.*, "the person liable may be a corporation using the proceeds of a pattern of racketeering activity in its operations." *Id.* at 402.

■ The court found this interpretation of subsections (a) and (c) consistent with the idea that corporations should not be liable if they are merely victims of a fraud perpetrated by lower-level employees, but that a corporation should be held liable if it has itself been a perpetrator of the fraud. Thus, under subsection (a), a corporation can be held liable if it is a perpetrator, or the direct or indirect beneficiary of the pattern of racketeering, but under subsection (c), where the corporation is merely the "victim, prize, or passive instrument" of racketeering, the corporation cannot be liable. 747 F.2d at 402.

■ In this case, as noted above, plaintiffs have alleged in Count I violations of § 1962(a), (b), (c) and (d). Since Allnet is the only remaining entity in Count I, it must serve as both the person liable and the enterprise. Under *Haroco*, the claim under § 1962(c) must be dismissed for failure to allege an enterprise separate and distinct from the "person" liable. However, the claim under § 1962(a) cannot be dismissed on this basis, since, under *Haroco*, Allnet may serve as both the "person" and the "enterprise."

■ The *Haroco* court did not address whether the "person" and the "enterprise" must be distinct under § 1962(b). However, applying the same analysis, it appears that, as with subsection (c), the same entity may not serve as both "person" and "enterprise." Section 1962(b) provides:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or

the activities of which affect, interstate or foreign commerce.

Although this provision does not contain the language in subsection (c) requiring that the person be employed by or associated with the enterprise, it does require that the person "acquire or maintain" an "interest in or control of" any enterprise. Like the language in subsection (c), this language implies that the person acquiring an interest in or control of the enterprise must be separate from the enterprise itself. As with subsection (c), the language contemplates that the enterprise is the victim, not the perpetrator, of the crime. Separate entities must therefore fill the roles of the "person" and the "enterprise." And, unlike subsection (a), subsection (b) does not refer to the use of funds in the "operation" of the enterprise, making unlikely the inference that the legislature intended subsection (b) to cover a corporation using the proceeds of racketeering activities for its own operations. The court therefore concludes that, for a cause of action under § 1962(b), the person liable and the enterprise must be two distinct entities. In this case, since Allnet cannot serve as both "person" and "enterprise," plaintiffs' claim in Count I under § 1962(b) must also be dismissed.

The only remaining claim in Count I is under § 1962(d), which makes unlawful conspiracies to violate § 1962(a), (b) and (c). Since a conspiracy necessarily requires more than one person, and the allegations with respect to the individual defendants have been dismissed, plaintiffs' cause of action under § 1962(d) must also be dismissed.

Accordingly, the court dismisses all causes of action alleged in Count I, except for plaintiffs' cause of action under 18 U.S.C. § 1962(a) against Allnet only. Plaintiffs are granted leave to file an amended complaint within 21 days from the date of this order. If an amendment is filed, defendants are granted 21 days to answer or otherwise plead.

### Count III—Federal Communications Act

In Count III, plaintiffs allege that defendants have violated section 203(c) of Title II of the Communications Act of 1934, as amended, 47 U.S.C. § 203(c), by charging plaintiffs rates in excess of its rate schedules filed with the FCC. Section 203(c) provides:

(c) No carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provision of this chapter and with the regulations made thereunder; and no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.

▇▇▇ Defendants assert that plaintiffs' claims under the Communications Act must be dismissed and referred to the FCC under the doctrine of primary jurisdiction. This doctrine requires courts to defer to administrative agencies issues intended by Congress to be within an agency's expert discretion. The Supreme Court described this doctrine in *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956), in which it stated:

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties ... "Primary jurisdiction" ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. *General American Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361.

Courts have applied this doctrine to require deferral to administrative agencies of matters that call for the exercise of an agency's discretion and expertise. For example, a dispute as to whether a carrier's rates or practices are reasonable has uniformly been deemed to be within the primary jurisdiction of the appropriate regulating agency. As the court held in *Danna v. Air France,* 463 F.2d 407, 409 (2nd Cir. 1972):

It is beyond dispute that claims that filed tariffs are either unreasonable in amount or unduly discriminatory in effect are questions that in the first instance must be determined by the agency with the tariffs are filed. Any attempt to sue in federal court or in state court on such claims without first obtaining an agency determination of unreasonableness or undue discrimination fails to state a cause of action.

*See also Montana-Dakota Utility Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951); *Detroit, Toledo and Irontown Railroad Co. v. Consolidated Rail Corp.,* 727 F.2d 1391, 1394–95 (6th Cir.1984); *Booth v. American Telephone and Telegraph Co.,* 253 F.2d 57 (7th Cir.1958).

However, when a party before a court challenges not the reasonableness of a tariff but only whether the carrier has failed to abide by the tariff, no issues requiring agency discretion or expertise are raised. As the court in *Danna v. Air France,*

*supra,* noted, quoting from *Pennsylvania Railroad Co. v. Puritan Coal Mining Co.,* 237 U.S. 121, 131–32, 35 S.Ct. 484, 488, 59 L.Ed. 867 (1915):

> But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or federal courts.

463 F.2d at 410.

The court in *Detroit, Toledo, supra,* recently succinctly summarized the law on this matter, stating:

> The rule which emerges from an examination of representative decisions is that federal courts should decide issues relating to purely commercial transactions between regulated carriers and should perform their judicial function of interpreting and enforcing contracts between such parties except when such judicial action results in interference with the functions congress has placed in the hands of the commission.

727 F.2d at 1396.

In this case, plaintiffs allege only that Allnet filed tariffs with the FCC, and then charged plaintiffs rates in excess of those stated in the tariffs. Thus, plaintiffs challenge only whether the tariff has been violated by Allnet, not whether the rates set were reasonable. The court is not called upon to set or in any way alter a tariff filed with the FCC. A decision in the merits in this case therefore requires no exercise of an administrative discretion, nor would it affect the overall regulatory scheme. The court need only decide whether the tariffs were in fact violated, a matter clearly within the province of the federal courts. The doctrine of primary jurisdiction is therefore inapplicable to this case.

Accordingly, defendants' motion to dismiss Count III is denied.

### Counts IV, V and VI—State Law Claims

The remaining counts, Count IV, V and VI, allege common law fraud (Count IV), violations of the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 311 *et seq.* (Count V), and violations of the Illinois Consumer Fraud & Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½ § 261 *et seq.* (Count VI). Defendants have moved to dismiss all three state law claims on the basis that they are preempted by the FCC Act.

Defendants rely primarily on *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2nd Cir.1968). In *Ivy,* the court addressed whether, in the absence of diversity jurisdiction, a federal court has jurisdiction over a claim for negligence and breach of contract in connection with telephone services provided by carrier regulated by the Communications Act. Although the court found that the remedy sought by plaintiffs was not available under the Act, it held that federal jurisdiction could be based on federal common law emanating from the act. The court observed that the broad statutory scheme embodied in the Act indicates a Congressional intent to occupy the field to the exclusion of state law. 391 F.2d at 490. The Court then concluded that:

> [Q]uestions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communication service are to be governed solely by federal law and ... states are precluded from acting in this area. Where neither the Communications Act nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

391 F.2d at 491.

Relying on this language, defendants assert that all state law claims relating to

matters governed by the Communications Act are preempted by the Act. Defendants ignore, and the *Ivy* court did not address, however, the "savings clause" embodied in section 414 of the Act, 47 U.S.C. § 414, which provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

The Supreme Court interpreted an identical "savings clause" in *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1975), in which the Court upheld the plaintiff's common law claim for fraudulent misrepresentation against an air carrier subject to regulation by the Civil Aeronautics Board under the Federal Aviation Act of 1958, 49 U.S.C. § 1381. Quoting from *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the court noted that a common law right is not abrogated, even without a savings clause, "unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory." 426 U.S. at 299, 96 S.Ct. at 1984. The Court in *Nader* concluded that the common law remedy was not preempted because "the common law action and the statute are not 'absolutely inconsistent' and may coexist." 426 U.S. at 300, 96 S.Ct. at 1985.

More recently, however, in *City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), the Supreme Court took a more restrictive view of the preemption question, holding that the previously created federal common law action

for nuisance was preempted by amendments to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* The savings clause in the Water Pollution Act provided that "[n]othing *in this section*" (emphasis added) precluded other common law and statutory remedies. Siezing upon this limiting language, the Court held that, although nothing in that particular section of the act, the citizen-suit provisions, 33 U.S.C. § 1365, precluded common law remedies, the pervasive regulatory scheme of the act as a whole did preclude other remedies. 451 U.S. at 327–29, 101 S.Ct. at 1797–98. The Court may therefore be retrenching somewhat from its expansive view in *Nader* of savings clauses and common law remedies in highly regulated fields.[1]

Few courts have specifically addressed the question of preemption with respect to the Communications Act. One court, in *Comtronics, Inc. v. Puerto Rico Telephone Co.*, 553 F.2d 701 (1st Cir.1977), interpreted § 414 in a manner consistent with the Supreme Court decisions discussed above. In *Comtronics*, the court held that the plaintiff had no cause of action under the Communication Act because "connecting carriers" such as the defendant in that case were explicitly exempted from its coverage. The court also dismissed the plaintiff's constitutional claims, stating that the "precisely drawn, detailed statute preempts more general remedies." 553 F.2d at 707, quoting *Brown v. G.S.A.*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976). In reaching this result, the court interpreted § 414 as follows:

> Because we hold that Congress withheld a damages remedy under the Act against connecting carriers ..., we think it would make little sense to hold that a damages remedy exists against them un-

---

1. It should be noted that the alternate remedies sought in *City of Milwaukee* were under federal common law, not state common law, and the court discussed the vague and indeterminate nature of federal common law remedies, in contrast with the comprehensive regulatory program supervised by an expert administrative agency established under the 1972 Amendments to the Federal Water Pollution Control Act. The decision may therefore be distinguished from the instant case on this basis, and more importantly, because the savings clause in the instant case is not limited to preserving causes of action in a particular section of the Act, but instead expressly applies to the entire Act.

der § 1983 for violations of the very same Act. The "existing" remedies Congress had in mind under § 414 would scarcely be remedies so closely dependent upon the Act itself; rather we read § 414 as preserving causes of action for breaches of duty distinguishable from those created under the Act, as in the case of a contract claim ...

553 F.2d at 707–08, n. 6 (citations omitted). This ruling is consistent with *Nader,* because the court recognized causes of action outside the act only when they do not conflict with express provisions of the act. The decision in *City of Milwaukee* does not impact on this interpretation of § 414, because § 414 applies specifically to the entire Communications Act, not only to a particular provision of the Act.

The same conclusion was recently reached by the court in *Kaplan v. ITT–U.S. Transmissions Systems, Inc.,* 589 F.Supp. 729 (E.D.N.Y.1984). In *Kaplan,* the plaintiff alleged that the defendant charged customers for unanswered long distance calls without disclosing this fact to the customers. Plaintiffs sued under § 201(b) of the Communications Act, 47 U.S.C. § 201(b), as well as under the New York Deceptive Acts and Practices, General Business Law § 349 (McKinney's), and for fraud, misrepresentation, and breach of agreements embodied in defendant's advertisements.

In a well-reasoned decision, the court applied the test set forth in *Comtronics, supra,* and concluded that the common law claims asserted by plaintiffs are not preempted by the Communications Act. The court reasoned that the breaches of duty alleged under the common law claims are markedly different from the statutory claims. 589 F.Supp. at 735. For example, to prove fraud and misrepresentation, the plaintiff must establish a breach of a duty to disclose information, as well as scienter,

reliance, and damages. *Id.* at 736. The court concluded that, since the common law causes of action challenge conduct that is not contemplated by the Communications Act, under *Comtronics,* § 414 serves to preserve the common law actions alleged by plaintiff in this case.[2]

This court finds the reasoning in *Comtronics* and *Kaplan* persuasive, and reflective of current legal analysis of the preemption issue. Under these decisions, § 414 must be applied to preserve the common law actions alleged by plaintiffs in this case. As in *Kaplan,* the plaintiffs here allege common law fraud, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Deceptive Trade Practices Act. The duty owed by defendants under each of these causes of action is distinct from the duties created by the Communications Act; each is intended to prohibit different types of wrongs distinct from those prohibited by the Communications Act. None of these causes of action conflicts with provisions of the Communications Act or interferes in any way with the regulatory scheme implemented by Congress. The Court therefore concludes that § 414 applies to preserve these causes of action.

Accordingly, defendants' motion to dismiss Count IV, V and VI is denied.

---

2. *See also Ashley v. Southwestern Bell Telephone Co.,* 410 F.Supp. 1389, 1392–93 (W.D.Tex.1970) (action for invasion of privacy not preempted by Communications Act); *Essential Communications Systems, Inc. v. American Telephone And Telegraph Co.,* 610 F.2d 1114, 1120–21 (3rd Cir. 1979), and *Sound, Inc. v. American Telephone and Telegraph Co.,* 631 F.2d 1324, 1329 (8th Cir.1980) (Communications Act held not to preempt actions under antitrust laws).