**Tom KOULOURIS, Plaintiff,**

v.

**ESTATE OF Hymen P. CHALMERS and Electronics, Missiles & Communications, Inc., Defendants.**

No. 89 C 0734.

United States District Court, N.D. Illinois, E.D.

March 25, 1992.

Daniel Francis Webb, Jr., Chicago, Ill., for plaintiff.

Howard R. Barron, Ronald L. Marmer, Howard Steven Suskin, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Along with a number of other lawsuits filed in the Northern District of Illinois, this action arises from the sale of stock of Electronics, Missiles & Communications, Inc. ("EMC") in the mid–1980s. Plaintiff Tom Koulouris brings this two-count amended complaint against EMC and the Estate of Hymen P. Chalmers, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and common-law fraud. EMC and the Estate now move to dismiss Koulouris' amended complaint for

failure to state a claim. For the reasons set forth below, we grant the motions.

## I. BACKGROUND [1]

Beginning on or about January 14, 1984, Chalmers, who was a director, treasurer and shareholder of EMC, together with Andrew Nanos, an EMC shareholder, conducted an aggressive sales campaign to promote the sale of EMC stock in the Chicago metropolitan area. In an effort to arouse investor interest and to induce Koulouris and other individuals to purchase EMC stock, Chalmers and Nanos purportedly made false representations and omissions of fact regarding EMC's financial status and the market value of the stock. Koulouris purchased approximately 14,800 shares of EMC common stock between 1982 and 1985 at prices ranging from $5 to $16½ per share,[2] partly as a result of the alleged misrepresentations and omissions of material fact.

Finding itself in a precarious financial condition, in September 1984, EMC obtained an exemption from the registration requirements of the federal securities laws, pursuant to "Regulation A: promulgated under § 3(b) of the Securities Act of 1933, 15 U.S.C. § 77c(b), clearing the way for an offering of common stock to be sold to the public. Despite the funds raised through this Regulation A offering, EMC's financial status remained dire. Indeed, in January 1985, EMC defaulted on a $2 million revolving line of credit, prompting the Board of Directors to consider filing for protection under Chapter 11 of the Bankruptcy Act. In a desperate attempt to raise funds, EMC initiated another Regulation A offering in February 1985, consisting of 1,242,000 shares of common stock at $1 per share. Koulouris claims that the February 1985 offering violated Regulation A in that it

---

**1.** Of course, as with all motions to dismiss, we take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

**2.** Koulouris also states that in April of 1985, "[d]efendants acting for the plaintiff absent his knowledge, consent or authorization, purchased an additional number of shares of EMC stock." Although he cannot calculate the exact number of shares purchased, the average purchase price exceeded $10 per share.

was commenced in less than twelve months after the previous offering. Moreover, as the market price at the time of the offering ranged between $4¾ and $6¾ per share, Koulouris maintains that EMC further violated Regulation A by offering the stock at a price in disregard of its market value.

On October 14, 1985, *Barron's*, a weekly financial newspaper, reported that the market price for EMC stock was inflated in light of EMC's financial difficulties. As a result of the article, on October 15, 1985, EMC stock dropped from an opening bid of $14 per share to $11¼ in less than an hour. In order to support the price of the stock, Chalmers, Nanos and other unnamed individuals placed purchase orders for approximately 152,000 shares, allegedly with no intention of payment. Nevertheless, on October 22, 1985, the market price of EMC stock plunged to $2½ per share.

Koulouris contends that from October 25, 1985, until January 27, 1989, the date he filed this action, Nanos and Chalmers lulled him into inaction "by blaming the fall in the price of EMC stock, among other reasons, on unknown persons who were trying to hurt the defendants by selling EMC stock short." In his initial complaint, Koulouris charged EMC, Chalmers and Nanos with violations of federal securities laws, RICO and common-law fraud. On December 3, 1991, this court dismissed Koulouris' securities claims, concluding that they were barred under the applicable statute of limitations. Accordingly, we granted Koulouris leave to file the current amended complaint, which withdraws all securities claims, removes Nanos as a defendant and substitutes the Estate of Hymen P. Chalmers as a defendant in place of Chalmers, now deceased.

## II. DISCUSSION

EMC and Chalmers' Estate raise several challenges to Koulouris' amended complaint. First, both defendants contend that the RICO and other fraud claims are not pled with the particularity required by Fed. R.Civ.P. 9(b). Second, respecting the RICO count, EMC and the Estate argue that Koulouris failed to allege: (1) that either EMC or Chalmers committed a predicate act under RICO; (2) that either EMC or Chalmers engaged in a "pattern of racketeering activity," as required by § 1962(a)–(c) and defined in § 1961(5); and (3) that either EMC or Chalmers conspired to violate any of the provisions of RICO, as required by § 1962(d). Third, EMC maintains that Koulouris' claim under § 1962(c) must be dismissed, as EMC cannot be liable as both a "person" and "enterprise" under that section. Fourth, the Estate asserts that Koulouris' § 1962(a) claim must be dismissed because Koulouris has failed to allege that Chalmers received or invested income from racketeering activity in an enterprise, as required under that section. Finally, defendants argue that Koulouris' common-law fraud claim should be dismissed for lack of supplemental jurisdiction. We address each argument in turn.

### A. Rule 9(b) Particularity

Defendants argue that Koulouris' RICO and other fraud claims are not pled with the particularity required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). We disagree.

■ Rule 9(b)'s requirements are certainly applicable to fraud claims in civil RICO complaints. *See Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F.Supp. 869, 872 (N.D.Ill.1990). These requirements, however, are not absolute or unbounded; defendants need not be given a "pretrial memorandum containing all the evidentiary support for plaintiff's case." *Uniroyal Goodrich*, 749 F.Supp. at 872 (citing *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y.1980); *Bruss Co. v. Allnet Communication Servs., Inc.*, 606 F.Supp. 401, 405 (N.D.Ill.1985)).

■ Koulouris' complaint need only set forth "a brief sketch of how the fraudulent scheme operated, when and where it oc-

curred, and the participants." *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975); *Uniroyal Goodrich*, 749 F.Supp. at 872. Koulouris' amended complaint contains specific allegations concerning two sets of purported fraud. First, Koulouris maintains that the circumstances surrounding the February 1985, Regulation A offering are tantamount to fraud. In support of this allegation, Koulouris states that the offering was commenced in less than twelve months after the previous offering, and was priced in disregard to the market price for EMC stock—clear violations of Regulation A. Amended Complaint ¶¶ 11–12, at 3–4. Further, contrary to EMC's assertion, the facts underlying these violations support the inference that it was willful and fraudulent:

> Defendant Chalmers personally selected the 18 recipients of the stock of EMC, offering them the opportunity to make substantial profits on their $1 per share investment. He did this so as to have a ready supply of stock in order to further his scheme to manipulate the market by fraudulently generating a demand for the stock.

*Id.* ¶ 19, at 5–6. Second, Koulouris states that during the aggressive campaign to promote EMC stock in the Chicago metropolitan area, both Chalmers and Nanos made misrepresentations and omissions regarding the financial status of EMC. Specifically, Koulouris claims that Chalmers and Nanos, failed to disclose the fact that a Regulation A offering was in progress, whereby the EMC stock was being offered at $1 per share. *Id.* ¶ 26, at 7. According to Koulouris, neither Chalmers nor Nanos stated that "EMC had suffered severe financial difficulties subsequent to the publication of its last report on its SEC Form 10–K." *Id.* These allegations regarding each of the purported sets of fraudulent activity are sufficiently particular to meet the requirements of Rule 9(b); they "adequately detail[ ], in broad strokes, the nature and essential factual elements of the alleged fraud.... [T]he defendants are not left guessing as to the outlines to the fraud, its purposes, or the critical facts...." *Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736, 744 (N.D.Ill.1981).

### B. Violation of Regulation A as a Predicate Act

In order to state a claim under the RICO statute, Koulouris must allege "at least two acts of racketeering activity" transpiring within a ten-year time period. 18 U.S.C. § 1961(5) (1984). Section 1961(1), wherein "racketeering activity" is defined, includes as a predicate act "any offense involving ... fraud in the sale of securities ... punishable under any law of the United States." *Id.* § 1961(1)(D). Defendants' current contention is that non-compliance with Regulation A, 15 U.S.C. § 77c(b), does not fall within the ambit of § 1961(1)(D) or any other of the enumerated acts set forth in § 1961(1) and, as such, cannot provide the basis for a predicate act under RICO.

Regulation A, promulgated by the SEC pursuant to § 3(b) of the Securities Act of 1933, provides issuers of certain securities an exemption from the general registration requirements of the federal securities laws. The exemption is contingent on a number of technical requirements, detailed at 17 C.F.R. §§ 230.236–230.263. Failure to comply with these requirements can only result in suspension of the registration exemption, *see id.* § 230.261, and not criminal sanction (*i.e.*, not "punishment" as required by § 1961(1)(D)). It is axiomatic that, in order to constitute a predicate act, the conduct in question must be "an act in itself subject to *criminal* sanction." S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) (emphasis supplied); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985) ("[T]he predicate acts involve conduct that is 'chargeable' or 'indictable,' and 'offense[s]' that are 'punishable,' under various *criminal* statutes. § 1961(1). As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be.") (emphasis supplied). While the allegations surrounding the purported violation of Regulation A may be tantamount to fraud,

the violation itself is not subject to criminal prosecution and, therefore, it does not fall within the statutory definition of "racketeering activity."

■ This is not to say, however, that Koulouris has failed to allege two predicate acts. Indeed, any willful misrepresentation, or omission, of a material fact made in connection with the sale of the EMC stock certainly falls within the statutory definition of "racketeering activity." *See Laird v. Integrated Resources, Inc.,* 897 F.2d 826, 838 (5th Cir.1990) (misrepresentation and/or failure to disclose in violation of § 10(b) and Rule 10b–5 as a predicate act under RICO); *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 807–809 (7th Cir. 1987) (same); *Norris v. Wirtz,* 703 F.Supp. 1322, 1330 (N.D.Ill.1989) (same). Koulouris' amended complaint explicitly sets forth two such acts, allegedly committed as part of Chalmers' aggressive sales campaign: (1) that Chalmers and Nanos failed to disclose that a Regulation A offering was in progress, whereby the EMC stock was being offered at $1 per share; and (2) that neither Chalmers nor Nanos stated that EMC had suffered severe financial difficulties subsequent to the publication of its last report on its SEC Form 10–K. Neither EMC nor Chalmers' Estate argues that these acts do not fall within the statutory definition of "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D).

## C. The Pattern Requirement of Subsections 1962(a)–(c) [3]

■ Assuming that the alleged § 10(b) violations are sufficient to constitute "racketeering activity," these predicate acts alone do not establish a "pattern of racketeering activity," as required by § 1962(a)–(c) and defined in § 1961(5). Rather, Koulouris must satisfactorily allege that the "racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) ("It is this factor of continuity plus relationship which combines to produce a pattern."). Koulouris appears to satisfy the relationship element of the pattern requirement. As noted in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986), "[r]elationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *See also H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901 (relationship

**3.** Section 1962 provides in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or in the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through the collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(a)–(c) (1984).

element is satisfied where the predicate acts "are said to be related by a common purpose"). In the instant case, the purported omissions are most certainly related. These predicate acts involved the same type of misconduct, occurred simultaneously and were undertaken for a single goal (*i.e.,* generating a demand for EMC stock).

■ Koulouris, however, cannot establish that these predicate acts possess the continuity necessary to constitute a pattern of racketeering activity. " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902. While the Supreme Court has not established a general test applicable in continuity determinations, the Seventh Circuit has set forth a number of relevant factors to guide the inquiry, including: " 'the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.' " *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 820 (7th Cir.1991) (quoting *Morgan,* 804 F.2d at 975). Presently, Koulouris has alleged two predicate acts,[4] which for all practical purposes are identical in kind. These acts, together aimed at inducing Koulouris to buy EMC stock, took place over a period of approximately 21 months—from January 14, 1984 (the beginning of the sales campaign) to October 1985 (the collapse of the stock).[5] Although Koulouris initially sought to bring this suit as a class action, and thus his amended complaint references "others similarly situated," Amended Complaint ¶ 23, at 6, Koulouris has not set forth any allegations indicating that Chalmers targeted any other victims. Indeed, the facts as alleged support nothing more than a single scheme inflicting one distinct injury on Koulouris, the deterioration in value of his EMC stock. The circumstances of this case evince the type of closed-ended scheme transpiring over a relatively short period of time that lacks sufficient continuity to comprise a pattern. *See, e.g., U.S. Textiles, Inc. v. Anheuser–Busch Companies,* 911 F.2d 1261, 1267–68 (7th Cir.1990) (seventeen months); *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 594–95 (7th Cir.1989) (twenty-eight months), *cert. denied,* —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990).

Notwithstanding the short duration of the scheme, Koulouris attempts to establish the threat of continued criminal activity by arguing that "the predicate acts are a regular way of conducting defendants' ongoing legitimate business." *See H.J., Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902. This contention, however, is completely unsupported by the allegations of Koulouris' amended complaint. That Chalmers or EMC, through the actions of Chalmers or any other officer, committed securities fraud as a regular way of conducting ongoing business requires more than allegations concerning the circumstances surrounding Koulouris' dealings with Chalmers. *See Fleet Credit Corp. v. Sion,* 893 F.2d 441, 447–48 (1st Cir.1990); *Johnston v. Wilbourn,* 760 F.Supp. 578, 588 n. 13 (S.D.Miss. 1991). Koulouris has not pointed to any

---

**4.** Given the continuous nature of the omissions at issue, we recognize the arbitrariness involved in calculating the precise number of predicate acts. As noted above, *supra* subsection II(B), this case involves omissions of two material facts: the existence of the February 1985 Regulation A offering and the precarious financial condition of EMC. While it is not beyond the realm of argument that there may be as many predicate acts as occasions in which Chalmers met with Koulouris and failed to disclose these facts, it seems more reasonable to conclude that Koulouris' allegations give rise to only two predicate acts. In any event, the number of predicate acts is only one of the *Morgan* factors, and even if we were to characterize the quantity of racketeering activity as more numerous, such a finding would not belie our ultimate conclusion that Koulouris has failed to satisfy the continuity requirement.

**5.** Indeed, Koulouris concedes that the "threat of continued criminal activity ... was stopped ... by the collapse of EMC's stock." Response to EMC's Motion to Dismiss at 5.

other transaction in which defendants made a misrepresentation, or omission, of material fact in connection with the sale of securities. In short, Koulouris has not presented one shred of evidence that racketeering is defendants' regular way of conducting business.

In the absence of racketeering activity amounting to, or posing a threat of, continued criminal activity, we dismiss Koulouris' claims against each defendant predicated on violations of § 1962(a)–(c).[6]

### D. Subsection 1962(d) Conspiracy

Subsection 1962(d) of the RICO statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (Supp. 1991). Defendants argue that Koulouris' conspiracy claim under § 1962(d) should be dismissed for failure to allege a colorable conspiracy. We agree.

■ "A plaintiff alleging conspiracy must identify the nature of the conspiracy and the defendant's role in it with some particularity." *Midwest Grinding Co. v. Spitz,* 716 F.Supp. 1087, 1093 (N.D.Ill.1989) (citing *Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889, 896 (N.D.Ill.1987)). Specifically, as conspiracy hinges on agreement, "the plaintiff must allege with some particularity facts sufficient to show an agreement between the parties to inflect the alleged wrong." *Id.* The only reference to a conspiracy in Koulouris' amended complaint is the conclusory statement that "[t]he acts, misrepresentations and omission of Chalmers in conspiracy with co-conspirator Andrew Nanos to violate [subsections] (a), (b) and (c) of § 1962 of Title

18 U.S.C. constituted a violation of 18 U.S.C. § 1962(d)." Amended Complaint ¶ 43, at 13. Notwithstanding the fact that the conspiracy as alleged does not include defendant EMC, Koulouris has failed to allege any facts supporting an inference of agreement on the part of either defendant or Nanos. Nor does Koulouris set forth any facts indicating the nature of the purported conspiracy or each defendants' role in it. Accordingly, defendants' motions to dismiss Koulouris' § 1962(d) claim is granted.

### III. CONCLUSION

While Koulouris has adequately asserted two instances of "racketeering activity," he has failed to satisfactorily allege that the racketeering predicates amount to, or pose a threat of, continued criminal activity. Accordingly, we dismiss Koulouris' claims against each defendant predicated on violations of § 1962(a)–(c). Further, in the absence of particular allegations of agreement, Koulouris' conspiracy claim under § 1962(d) must fall. Finally, Koulouris' common-law fraud claim is dismissed without prejudice for lack of supplemental jurisdiction.[7] It is so ordered.

---

**6.** In light of Koulouris' failure to satisfy the continuity requirement, we need not consider EMC's arguments (1) that it cannot be liable under § 1962(c) as both a "person" and an "enterprise," and (2) that it cannot be held vicariously liable for the actions of Chalmers. Further, our conclusion respecting the pattern requirement obviates the need to consider the Estate's argument that Chalmers did not receive or invest income from racketeering activity in an enterprise, as required by § 1962(a).

**7.** *Olive Can Co. v. Martin,* 906 F.2d 1147, 1153 (7th Cir.1990) ("When the federal claims are disposed of before trial, the state claims should be dismissed without prejudice almost as a matter of course.") (citing *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.,* 805 F.2d 663, 682 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987)).