**TRANSPORTATION DATA INTERCHANGE, INC.**

v.

**AT&T CORP.**

**Civil Action No. CCB–95–946.**

United States District Court,
D. Maryland.

March 28, 1996.

Barton D. Moorstein, Rockville, MD, for Plaintiff.

John M.G. Murphy, Ober, Kaler, Grimes and Shriver, Baltimore, MD, for Defendant.

### *MEMORANDUM OPINION*

BLAKE, District Judge.

Transportation Data Interchange (TDI) brought suit against AT & T Corp. (AT & T) in the Circuit Court for Montgomery County in January 1995, alleging breach of contract and deceptive trade practices pursuant to Md.Com.Law Code Ann. § 13–301, *et. seq.* AT & T removed to this Court on March 29, 1995. On March 29, 1995, AT & T also counterclaimed for $17,351.85, the amount it claimed TDI owed on its long distance account as of that date, on the ground that AT & T is required to collect the full rates filed in FCC tariffs, regardless of the rate previously agreed upon. Now pending is AT & T's motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1]

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because all claims are governed by the Federal Communications Act of 1934, 47 U.S.C. § 151, *et seq.* (the Communications Act).

### BACKGROUND

AT & T is a common carrier that provides interstate and foreign communication services. All service rates are set by tariffs filed with the Federal Communications Commission (FCC) pursuant to 47 U.S.C. § 203(a)–(b). TDI is a Maryland corporation which operates a telecommunications enterprise specializing in providing services for the courier industry.

In November 1993, AT & T contacted TDI regarding its long distance telephone service.

TDI at that time paid its long distance carrier at the rate of $.18 per minute. In an attempt to lure TDI to its long distance service, AT & T allegedly offered TDI a rate of $.13 per minute. After some discussion, TDI and AT & T allegedly agreed both orally and in writing to a long distance rate which included several bonuses and discounts, as well as a computer program to allow TDI to "bill back" its customers for the cost of their long distance telephone calls. AT & T then provided TDI with its "800 Readyline" service pursuant to AT & T Tariff FCC No. 2, and "CustomNet" telecommunications service pursuant to AT & T Tariff FCC No. 1. (Michlich Decl., Df.Mot., Ex. B at ¶ 3.; Ex. C, Pl.'s Resps. to Request for Admis. No. 11, 12, 13, 14.)

When TDI received its bill from AT & T, however, the rates charged were higher than the $.13 per minute allegedly agreed to. Neither party disputes that the rates charged comported with the rates set forth in the appropriate tariff. (Df.Mot., Ex. B, Michlich Decl. at ¶ 5; Ex. A, Harris Dep. at 19–20; Ex. C, Pl.'s Resp. to Request for Admis. No. 16.) TDI also maintains that the bill back computer program did not work. TDI's long distance bills remain unpaid.

### ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

---

**1.** As of the date of filing the motion for summary judgment, the amount claimed by AT & T was

$22,754.31, plus prejudgment interest.

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

■■■ Moreover, the Supreme Court has explained that the Rule 56(c) standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court has stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *see also Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67 & 68, 130 L.Ed.2d 24 (1994); *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236, 240 (4th Cir.1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw,* 13 F.3d at 798, but it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). "[A] defendant ... should not be required to undergo the considerable expense of preparing for and participating in a trial" unless the plaintiff has produced "evidence on which a jury might rely" in support of the claims alleged. *E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.,* 678 F.Supp. 567, 573 (D.Md.1988).

■■■ The Communications Act requires telecommunication common carriers such as AT & T to file tariffs with the FCC setting forth their charges and "classifications, practices, and regulations affecting such charges." 47 U.S.C. 203(a). The Communications Act further provides that "no carrier shall ... charge, demand, collect, or receive a greater or less or different compensation for [covered] communication, or for any service in connection therewith, ... than the charges specified in the [tariff] schedule then in effect." 47 U.S.C. § 203(c). The Fourth Circuit has held that once filed with the FCC the tariff rates are mandatory, even if the carrier has quoted a lower rate to the customer. *Marco Supply Co. v. AT & T Communications, Inc.,* 875 F.2d 434, 436 (4th Cir.1989) (citing cases). Tariffs filed with the FCC conclusively and exclusively control the rights and liabilities between the parties. *Id.*

In *Marco Supply,* the Marco Supply Co. alleged that it contracted with AT & T for AT & T to install a computer-telephone network, based upon AT & T's oral and written price quotations. *Id.* at 435–436. When Marco received its first bill, however, it discovered that it had been charged several times what the agreement called for. In response to Marco's protests, AT & T explained that the quotations were in error and that the rates were mandatorily established by the applicable tariff filed with the FCC. Marco filed suit against AT & T, claiming breach of contract, and negligent and willful misrepresentation. The district court granted AT & T's motion to dismiss on the ground that AT & T's prior representations could not estop it from charging the rates established in the tariffs filed and approved by the FCC. Further, the district court held that Marco's willful misrepresentation claim failed because customers of regulated carriers, who are presumed to know the actual tariff rates, cannot reasonably rely on any misrepresentation as to the applicable rate.

The Fourth Circuit, recognizing that equitable considerations do not override a carrier's duty to collect the tariff rate, affirmed the district court. (*Id.* at 436 ("Marco's problem in this case is that while it may have equity on its side, the law is against it.")) The Fourth Circuit held that:

a regulated carrier *must* charge the tariff rate established with the appropriate regulatory agency, even if it has quoted or charged a lower rate to its customer....

Furthermore, the aggrieved customer cannot assert that the carrier is estopped to charge the actual tariff rate because customers are presumed to know what the applicable tariff is. . . . Finally, courts have held that a customer does not have a claim for relief against a carrier even if the latter's representation as to applicable rates is fraudulent. . . . We hold that these principles apply to contracts entered into between carriers whose rates are regulated by the Federal Communications Commission and their customers.

*Id.* (emphasis in original) (citations omitted).

■ TDI does not dispute that the charges claimed by AT & T are for services controlled by the tariffs filed with the FCC. Moreover, the amounts charged by AT & T conform with the appropriate tariffs. AT & T *"must"* charge the tariff amount, and any reliance by TDI on AT & T's misrepresentation of the published tariff rates is not reasonable as a matter of law. *See id.; Appel v. Hupfield,* 198 Md. 374, 84 A.2d 94 (1951) (requiring reasonable reliance as an element of fraud). Thus, TDI's claims for breach of contract and fraud must fail.

TDI attempts to avoid this result by arguing that the "savings clause" of the Communications Act, 47 U.S.C. § 414, precludes federal law preemption of this claim.[2] Both of the cases TDI cites in support of this position, *Bruss v. Allnet Communication Servs., Inc.,* 606 F.Supp. 401 (N.D.Ill.1985), and *Kellerman v. MCI Telecommunications Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), however, are inapposite. In *Bruss,* the plaintiffs claimed that the defendant carrier charged them rates *in excess of* those specified in the tariffs filed with the FCC. *Id.* at 404. The district court held that the plaintiffs' claims for common law fraud and violation of several Illinois consumer protection statutes were not preempted because the duty owed by defendants under each of these causes of action was distinct from the duties imposed by the Communications Act, and each cause

of action was intended to prohibit different types of wrongs from those prohibited by the Communications Act. *Id.* at 411. By contrast, TDI's causes of action conflict directly with AT & T's FCC imposed duty, and the Communications Act explicitly addresses the wrong they seek to prohibit. To allow TDI to proceed would directly contravene both the effect and the purpose of the Communications Act.

Similarly distinguishable is *Kellerman,* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045 (1986). There, the plaintiff class claimed that various allegedly misleading MCI advertisements violated Illinois consumer protection statutes and constituted breach of contract and common law fraud. The court held that the subject matter of the claims involved neither the quality of MCI's service nor the reasonableness and lawfulness of its rates. *Id.,* 112 Ill.2d at 443, 98 Ill.Dec. at 30, 493 N.E.2d at 1051. The court characterized the plaintiffs' claims as alleging only dissemination of fraudulent and deceptive advertisements about its long distance service. *Id.* As such, MCI's actions were no different from those of any other business which advertised on a nationwide basis and was subject to federal and state regulation in a number of different areas. *Id.* In the instant case, TDI's claims directly concern the lawfulness of the rates charged. The conflict of state law with the Communications Act is plain and dictates preemption of TDI's claims.

Finally, TDI argues that *Marco* does not apply because TDI raises fraud defensively as well as offensively. The only case cited by TDI does not support this distinction. *Cooperative Communications, Inc. v. AT & T Corp.,* 867 F.Supp. 1511 (D.Utah 1994). As with *Bruss* and *Kellerman,* the *Cooperative Communications* court simply found that allegations that did not implicate the lawfulness of rates charged fell outside the filed rate doctrine. As discussed above, the legal issues presented in the instant case are distinguishable. The court in *AT & T Co. v. Florida–Texas Freight, Inc.,* 357 F.Supp. 977

**2.** The savings clause provides that: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

(S.D.Fla.), aff'd, 485 F.2d 1390 (5th Cir.1973), applied the filed rate doctrine to the customer's defenses and granted summary judgment for AT & T. The Second Circuit in an ICC case held that the filed rate doctrine precludes raising equitable defenses. *Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.*, 893 F.2d 472, 474–75 (2nd Cir.), *vacated on other grounds*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 409 (1990). I find no reason not to apply the Communications Act to TDI's defenses as well as its claims.

 AT & T also seeks prejudgment interest on the undercharges. In an ICC filed rate case, the Fourth Circuit stated that "[w]aiver of prejudgment interest would confer on those who delay payment of the balance due an advantage over shippers who meet their obligations promptly." *Coliseum Cartage Co. v. Rubbermaid Statesville*, 975 F.2d 1022, 1026 (4th Cir.1992) (remanding to district court for award of prejudgment interest against shipper who was liable for undercharges in violation of filed rate doctrine) (quoting *Consolidated Rail Corp. v. Certainteed Corp.*, 835 F.2d 474, 478 (3d Cir. 1987)). Prejudgment interest, calculated from the date payment was due, is regularly awarded in claims for tariff undercharges. *See id.; Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.*, 931 F.2d 5, 7 (2nd Cir.1991) "Permitting [customer] to recover undercharges 'without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the value of the use of the money owed for the period prior to judgment.'" (quoting *Consolidated Rail*, 835 F.2d at 478–79); *Southern Pac. Transp. Co. v. San Antonio*, 748 F.2d 266, 274–75 (5th Cir.1984). Prejudgment interest will be awarded to AT & T.

Accordingly, TDI must pay AT & T for the services provided at the rates filed with the FCC, including prejudgment interest, regardless of any price quotations to the contrary made by AT & T representatives. Summary judgment will be granted for the defendant, AT & T, by attached separate Order. The plaintiff, TDI, will be ordered to pay AT & T the amount owed on its counter-claim, plus prejudgment and postjudgment interest at the rates permitted by law.