CONSOLIDATED RAIL CORPORA-
TION, Cross-Appellant in
No. 86–1732,

v.

CERTAINTEED CORPORATION,
Appellant in No. 86–1715.

Nos. 86–1715 & 86–1732.

United States Court of Appeals,
Third Circuit.

Argued Aug. 18, 1987.

Decided Dec. 14, 1987.

Rehearing Denied Jan. 6, 1988.

William H. Johnson (argued), Philadelphia, Pa., for Consolidated Rail Corp.

David P. Bruton (argued), Sheryl A. Donnella, Drinker Biddle & Reath, Philadelphia, Pa., for CertainTeed Corp.

Before GIBBONS, Chief Judge, and WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A railroad brought this action against a shipper for payment of undercharges. The district court determined that the defendant's product was substantially similar to that of another shipper and, consequently, the tariff that the ICC designated for the latter's product should apply to the defendant's as well. As a result, the district court entered judgment in favor of plaintiff railroad and against defendant shipper for substantial undercharges. We will affirm that judgment. The district court, how-

ever, declined to award prejudgment interest. We will reverse that aspect of the order because it runs afoul of the intent of the Interstate Commerce Act.

Defendant CertainTeed appeals from the adverse entry of summary judgment, and plaintiff Consolidated Rail Corporation (Conrail) cross-appeals from the denial of prejudgment interest.

Conrail claims undercharges on shipments of two CertainTeed products, "Ultra Duct Board" and "Industrial Insulation Board," both used in building construction. These items, broad, flat panels composed of fine glass fibers bonded together with a thermosetting resin, are made in a variety of thicknesses, strengths and rigidities. Ultra Duct Board generally is used to fashion air ducts for heating or cooling systems. Industrial Insulation Board can be used as a finished lining for walls, ceilings, tanks or equipment when insulating properties are needed.

Beginning in 1981, CertainTeed shipped this material via Conrail under the tariff classification of "Board, building, viz fiberboard, made of mineral fiber." In 1983, Conrail disapproved that rate and assigned the higher tariff for "insulating material, (mineral wool)." CertainTeed refused to pay the higher charges, and Conrail filed suit in the district court.

The district judge placed the case in suspense pending resolution of an overcharge proceeding instituted by the manufacturer of similar products before the Interstate Commerce Commission, *Knauf Fiberglass Gmbh v. Conrail*, ICC Docket No. 39739 (Oct. 1, 1985).[1] In due course the ICC ruled that the Knauf material was not "building board" but "mineral wool." The Commission concluded that "[n]either the 'building board' nor 'mineral wool' description totally captures the commodity in issue." Although the product had some characteristics of "board," the more precise descriptive terms, "mineral wool ( ... 'glass wool' or glass fibers)" were held

applicable. Accordingly the Commission, deciding against Knauf, determined that the higher tariff for insulating materials was correct.[2]

Learning of the ICC's decision, CertainTeed moved before the Commission to intervene in the *Knauf* proceedings and also sought a declaratory order describing the Ultra Duct Board and Industrial Insulation Board products. The Commission denied both requests, finding the petition for intervention untimely. Declining to issue a declaratory order, the Commission observed that the matter was the subject of a suit in the district court and that the judge had not authorized CertainTeed to seek ICC resolution of the issues.

Conrail then moved for summary judgment in the district court. During argument on the motion, the district judge permitted CertainTeed to seek expert testimony which might demonstrate that its products differed from Knauf's materials.

Following the district court's suggestion, CertainTeed deposed its senior vice-president of sales and marketing to describe Ultra Duct Board and Industrial Insulation Board. He also submitted a report on the subject. The vice-president conceded that both the Ultra Duct Board and the Knauf Air Duct Board were made of compressed glass fibers and were used for the construction of air ducts, but the CertainTeed product offered other applications as well. The witness also admitted that the products of the two companies were similar in appearance. He further testified that the basic composition of the duct boards and the Industrial Insulation Board was the same. Glass fibers in compressed form provided the essential component in all three products. In addition, the Industrial Insulation Board had insulation qualities, which other wall boards lack. The witness failed to point up any significant differences between the Industrial Insulation Board and the Knauf product.

---

1. The products involved in that proceeding were "Knauf Air Duct Board"; "Knauf Duct Board"; "insulation board-FSK"; "insulation board"; and "elevated temperature board."

2. Knauf Fiberglass has sought review of this decision in the United States Court of Appeals for the Seventh Circuit.

The parties submitted samples of both CertainTeed and Knauf products to the district court. After examining the samples and reviewing the *Knauf* ICC decision, the court was persuaded that the CertainTeed products "fall into the category of 'mineral wool,' ... an insulating board consisting of dense glass fibers [which] is still 'glass wool' and not 'building board.'" The court entered judgment in favor of Conrail for $1,427,620.39, the freight charges stipulated to be in issue. The court declined, however, to award prejudgment interest, agreed to be $144,000.

The court premised its refusal to award prejudgment interest on Conrail's failure to investigate the CertainTeed products because the weight of the shipments, substantially less than wall board, should have aroused curiosity. Furthermore, Conrail had not pursued CertainTeed for the higher rates until after the *Knauf* case was filed. For these reasons, the court concluded, "it would be inequitable to assess prejudgment interest."

On appeal, Conrail contends that the denial of prejudgment interest is inconsistent with the congressional policy embodied in the Interstate Commerce Act. On the merits of the tariff dispute, the railroad argues that CertainTeed failed to demonstrate a lack of similarity between its own products and Knauf's. Finally Conrail asserts that the doctrine of primary jurisdiction does not require referral of the tariff dispute in these circumstances to the ICC.

■ CertainTeed, on the other hand, maintains that it has been denied a forum in which to establish a complete factual record. In particular, CertainTeed contends that it manufactures industrial board in assorted thicknesses and strengths and that its products present a wider variety of application than comparable Knauf materials. CertainTeed comments, moreover, that in a reversal of previous practice, the ICC now will consider equitable defenses in actions for undercharges. As a consequence, defendant argues, suitable resolution of the dispute at hand requires that the Commission exercise its primary jurisdiction.

## I.

CertainTeed insists that the extent of similarity between its products and Knauf's remains an issue of disputed fact. The argument focuses on the labels CertainTeed attached to its products which refer to Ultra Duct Board and Industrial Insulation Board as "board." CertainTeed emphasizes that Knauf, in contrast, describes its material as "mineral wool." We deem this point insignificant. Knauf explained that it had previously adopted the "mineral wool" description because the tariff for that substance was less than the rate charged for insulating material.

Similarly, the more extensive application recommended for CertainTeed products does not affect their relative composition, weight and size. We do not disagree with the ICC's statement that "nature and character of a commodity at the time it is tendered for shipment determines its identity for transportation purposes."

Other significant factors which help identify a commodity include the producer's description, billing practice, use, and perception in the trade. However, the record does not contain evidence of this kind which would sharply differentiate CertainTeed and Knauf material.

The deposition of CertainTeed's vice-president also fails to establish any marked differences between the substances manufactured by the two companies. To the contrary, this witness conceded the difficulty in detecting any dissimilarity in appearance and characteristics. For example, in addition to the products' physical resemblance, the vice-president agreed that both tend to flake when scratched with a fingernail. In short, although given ample opportunity, CertainTeed failed to show the products of the two companies were not the same or substantially similar.

We find no genuine issue of material fact present in this record and conclude that the essential similarity of the products manufactured by Knauf and CertainTeed has been established.

## II.

Even so, CertainTeed stresses that because it was not a party to Knauf's ICC proceeding, that holding is not binding here. Applying the prerequisites of res judicata preclusion—identity of parties and issues—CertainTeed argues that the ICC has not yet determined the controversy at bar. In essence CertainTeed invokes the doctrine of primary jurisdiction, asserting that interpretation of the tariff should be performed in the first instance by the Commission.

■ CertainTeed raised this issue in the district court by a motion under Fed.R.Civ. P. 60(b), filed on the same day as this appeal. CertainTeed's appeal is not taken from a ruling on the Rule 60(b) motion; indeed, we are not aware that the district court has ruled on the matter.[3] Nevertheless, we are not barred from considering the question of primary jurisdiction at this stage.

In *United States v. Western Pac. R.R.*, 352 U.S. 59, 63–70, 77 S.Ct. 161, 164–68, 1 L.Ed.2d 126 (1956), the Supreme Court felt obliged to address the subject of primary jurisdiction though neither party had challenged this aspect of the lower court's rulings. Likewise, in *Locust Cartage Co. v. Transamerican Freight Lines*, 430 F.2d 334, 339–40 (1st Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970), the court on its own motion considered the applicability of primary jurisdiction, although neither party had pressed the issue on appeal. *See also Distrigas of Mass. Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1117 (1st Cir.1983) (well established that primary jurisdiction doctrine not waived by failure of parties to present it in trial court or on appeal). We conclude, therefore, that despite the absence of a district court ruling on Certainteed's Rule 60(b) motion to refer the matter to the ICC, we may nevertheless consider the question now.

As the Court explained in *Western Pac. R.R.*, the doctrine of primary jurisdiction promotes proper relationships between courts and administrative agencies. 352 U.S. at 63, 77 S.Ct. at 164. It applies "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* at 64, 77 S.Ct. at 165. In that setting, the judicial proceeding is suspended while the matter is referred to the agency for its views. *See also Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

■ Generally, questions of tariff construction fall within the expertise of the ICC. But it does not follow that all issues hinging on the construction of a tariff must be submitted to the Commission. As the Court remarked in *Western Pac. R.R.*, "[c]ertainly there would be no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it." 352 U.S. at 69, 77 S.Ct. at 168.

In *Crancer v. Lowden*, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077 (1942), a shipper contested in the district court the proper tariff classification of pipe fittings. A proceeding before the ICC some years earlier questioning different shipments but the same material had been decided adversely to the shipper. The Supreme Court agreed that the facts did not establish res judicata, but concluded that the ICC's previous "opinion could hardly have been more relevant to the question before the District Court.... [Consequently], [w]e think ... the District Court properly admitted and considered the administrative determination of virtually the same question as that before it." *Id.* at 635, 62 S.Ct. at 765.

---

**3.** The Rule 60(b) motion requested "an order re-opening this Court's judgment of October 24, 1986, as to damages, staying further proceeding, and referring this matter to the [ICC]." We need not consider at this juncture whether the district court would have had jurisdiction in any event to rule on the motion once the appeal was taken. Killeen v. Travelers Ins. Co., 721 F.2d 87, 90 n. 7 (3d Cir.1983).

Similarly, in *Farley Transp. Co. v. Sante Fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir.1985), the court observed that each case must be examined on its own facts to determine if the reasons for primary jurisdiction are present and whether the doctrine's purposes will be advanced.

CertainTeed urges, moreover, that the matter be remanded to the ICC in light of *Seaboard Sys. R.R. v. United States*, 794 F.2d 635 (11th Cir.1986). In that case, the court of appeals sustained the Commission's abrupt departure from its former policy requiring the collection of undercharges regardless how unfair or unreasonable that action might prove. But in *Seaboard* the shipper had relied to its detriment on the carrier's continual misquotations and misbillings. Those circumstances are not present here, where CertainTeed relied on its own, rather than Conrail's, interpretation of the tariff.

■ We find nothing to compel the exercise of primary jurisdiction at this stage. The ICC already has interpreted the tariff with respect to a product that the district court has properly determined to be indistinguishable in relevant characteristics from the items here. Further delay to obtain an administrative ruling whether a tariff for one commodity applies equally to another with the same properties cannot be justified.

Other factors influence our decision. A proceeding in the Northern District of Texas, *Missouri–Kansas–Texas R.R. v. CertainTeed Corp.*, No. CA3–86–0615–D, involves the same products and tariff. The district court in Texas referred the tariff interpretation question to the ICC after entry of summary judgment in the case at hand. Two issues have been certified to the Commission—first, the proper tariffs for Ultra Duct Board and Industrial Insulation Board, and second, the reasonableness of the carrier's collection of undercharges. And as noted above, the *Knauf* ruling has been appealed to the Court of Appeals for the Seventh Circuit. The ICC, therefore, already has the tariff question before it. Moreover, in the event it appears that *Knauf* was wrongly decided, the court of appeals can correct that result.

The pendency of those proceedings need not delay our disposition of this appeal. We will follow the approach used in *Crancer*,[4] and will preserve CertainTeed's right to reparations should the ICC find in the Texas proceeding that the tariff applicable to Knauf does not cover CertainTeed. CertainTeed also may seek reparations if on petition for review the court of appeals determines that the ICC erred in classifying Knauf products as mineral wool, and a lower tariff is ultimately approved.

### III.

■ We come finally to the issue of prejudgment interest. The district court found such an award inequitable because Conrail should have detected the undercharges much sooner. Perhaps so, but we find that denial of prejudgment interest in this case clashes with congressional policy. The Interstate Commerce Act, which aims to treat shippers uniformly and to foreclose opportunities for favoritism, implies full payment of tariff charges. 49 U.S.C. § 10761. Waiver of prejudgment interest would confer on those who delay payment of the balance due an advantage over shippers who meet their obligations promptly. In effect undercharges would afford a delinquent shipper an interest-free loan from the carrier.

In *Southern Pac. Co. v. Miller Abattoir Co.*, 454 F.2d 357 (3d Cir.1972), we approved assessment of prejudgment interest on an award for undercharged shipments of livestock. We pointed out that the carrier may lawfully charge only the full tariff for shipping freight. "To allow the Railroad to recover without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the

---

**4.** In *Crancer*, the Court said, "[i]f petitioners pay the judgment in this case, and the Commission should, in the still pending proceeding, decide to modify the tariffs, petitioners can obtain a complete remedy by way of reparation. The form of the Circuit Court's judgment specifically preserved petitioners' right to such reparation. We hold that under the circumstances there was no abuse of discretion by the trial judge." 315 U.S. at 636, 62 S.Ct. at 766 (citation omitted).

value of the use of the money owed for the period prior to judgment." *Id.* at 362. *Accord Fawley Motor Lines v. Cavalier Poultry Corp.,* 235 F.2d 416, 419 (4th Cir. 1956).

Because the question of prejudgment interest in a suit of this nature is not a matter of state law, such cases as *Ambromovage v. UMW,* 726 F.2d 972 (3d Cir. 1984), and *Thomas v. Duralite Co.,* 524 F.2d 577 (3d Cir.1975), are not helpful. Neither will a case decided under a federal statute control if no congressional intent on prejudgment interest can be discerned. *See Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947). *Cf. Commonwealth of Pa. Dep't of Pub. Welfare v. United States,* 781 F.2d 334, 341–42 (3d Cir.1986). Our holding in *Miller Abattoir Co.* outlined the law governing this case, and we will continue to follow that authority.

The judgment in favor of Conrail will be affirmed, subject to the right of Certain-Teed to seek reparations if the ICC should determine that a different tariff is applicable. The judgment is also subject to the right of CertainTeed to pursue reparations in the event Knauf succeeds in its petition for review in the Court of Appeals for the Seventh Circuit, and ultimately it is determined that a lower tariff applies to the two companies' products.

The order of the district court refusing to impose prejudgment interest of $144,000 will be reversed. The case will be remanded to the district court for the entry of an award in favor of Conrail and against CertainTeed in the additional amount of $144,-000, increasing the total amount of the judgment to $1,571,620.39.