975 F.2d 1022
 61 USLW 2218, 23 Fed.R.Serv.3d 710,
23 Bankr.Ct.Dec. 749,
Bankr. L. Rep. P 74,906
 COLISEUM CARTAGE COMPANY, INCORPORATED, formerly known as
Pacesetter Transportation Company; Consolidated/Mark, a
Joint Venture between Consolidated Stores International
Corporation and Mark Services, Incorporated, Plaintiffs-Appellees,
v.
RUBBERMAID STATESVILLE, INCORPORATED, formerly known as
Rubbermaid Specialty Products; Rubbermaid
Commercial Products, Incorporated,
Defendants-Appellants.
COLISEUM CARTAGE COMPANY, INCORPORATED, formerly known as
Pacesetter Transportation Company; Consolidated/Mark, a
Joint Venture between Consolidated Stores International
Corporation and Mark Services, Incorporated, Plaintiffs-Appellants,
v.
RUBBERMAID STATESVILLE, INCORPORATED, formerly known as
Rubbermaid Specialty Products; Rubbermaid
Commercial Products, Incorporated,
Defendants-Appellees.
 Nos. 91-2688, 91-2698.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1992.
Decided Sept. 16, 1992.
 
 Glen Franklin Koontz, Keller & Heckman, Washington, D.C., argued (Michael F. Morrone, Keller & Heckman, Joseph W. Grier, III, J. Cameron Furr, Jr., Grier & Grier, Charlotte, N.C., on the brief), for defendants-appellants.
 Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., argued (Robert B. Walker, John T. Siegler, Sims, Walker & Steinfeld, P.C., Langdon M. Cooper, Raboteau T. Wilder, Jr., Alala, Mullen, Holland & Cooper, P.A., Gastonia, N.C., on the brief), for plaintiffs-appellees.
 Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The primary issue in this appeal is whether Coliseum Cartage Company has standing to join in this action as a plaintiff with Consolidated/Mark. The second issue is whether Coliseum and Consolidated are entitled to rely on the two-year statute of limitations extension provided in § 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a). The district court ruled favorably for Coliseum and Consolidated on these issues in an action brought against Rubbermaid Statesville, Inc., and Rubbermaid Commercial Products, Inc. (Rubbermaid) to recover freight charges billed at less than the applicable tariff. The district court denied prejudgment interest. We affirm the district court's award of damages but vacate its denial of prejudgment interest and remand for an order awarding such interest.
 
 
 2
 * Coliseum and related companies hauled freight for Rubbermaid, charging rates that were less than the rates stipulated in the tariffs filed with the Interstate Commerce Commission. Although Coliseum's predecessor had represented that it would amend the tariff to conform to the rates, it never did so. Coliseum and Consolidated based their claim for damages on the Interstate Commerce Act. The Act provides that a carrier subject to ICC jurisdiction "shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter." 49 U.S.C. § 10761(a). Under this "filed rate" doctrine, a carrier must collect in full the published rate and a shipper cannot defend against an action to collect by pleading ignorance of the filed rate or misrepresentation by the carrier involved. See Louisville & Nashville R.R. v. Maxwell, 237 U.S. 94, 97-98, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). The shipper is liable for an undercharge even though, as here, it has negotiated with the carrier for the lesser rate. Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).
 
 
 3
 Coliseum filed a petition in bankruptcy to reorganize under Chapter 11. The bankruptcy court authorized Coliseum as a debtor-in-possession to sell its right, title, and interest in its prepetition freight bills, including the undercharged bills to Consolidated, for $130,000. About a year later, Coliseum and Consolidated presented to the bankruptcy court ex parte an amended agreement. The amended agreement provided that it was substituted for the original agreement nunc pro tunc the date of the original agreement, except for bills that Consolidated had already collected and Coliseum's retention of the $130,000, which it had received from Consolidated. The amended agreement appointed Consolidated agent of Coliseum to audit and collect the freight bills. Undercharges were to be collected as a balance due Coliseum. The amended agreement authorized Consolidated to pay the collection expenses and to disburse the net funds, paying itself 95% as compensation for its services and 5% to Coliseum. The agreement also provided that to the extent necessary, the amended agreement "shall be deemed a reconveyance to Coliseum of the rights Consolidated previously obtained nunc pro tunc the date of the original agreement "as though no prior conveyance had ever been made." The bankruptcy court approved the amended agreement, stating in its order that "it appear[s] to the Court that it will be in the best interests of the Debtor's estate and its creditors to authorize the entry of and to ratify and confirm this Amended Agreement."
 
 
 4
 When Coliseum and Consolidated brought adversary proceedings in bankruptcy against a number of shippers to collect undercharges, the bankruptcy court held that they had amended the agreement to create subject matter jurisdiction in the bankruptcy court. Applying 28 U.S.C. § 1359, which bars jurisdiction if a party has been improperly or collusively joined to invoke jurisdiction, the bankruptcy court dismissed the case for lack of jurisdiction. Nevertheless, the bankruptcy court did not modify or vacate its order approving the amended agreement. The bankruptcy court denied rehearing, and the district court affirmed.
 
 
 5
 Coliseum and Consolidated brought this action in the district court, basing jurisdiction on 28 U.S.C. § 1337 (jurisdiction of action arising out of Act regulating interstate commerce) and 49 U.S.C. §§ 10741(a), 10761, and 10762 (regulation of tariffs and collection of undercharges). The district court held Rubbermaid liable for the undercharges but denied prejudgment interest. Both parties appealed.
 
 II
 
 6
 Rubbermaid assigns error to the district court's ruling that Coliseum had standing to join Consolidated as a plaintiff. It contends that the initial agreement transferred all of Coliseum's rights in the undercharges to Consolidated and that the amended agreement merely provides for Consolidated to pay Coliseum 5% of its net collections without granting Coliseum any legally enforceable rights against third parties.
 
 
 7
 The district court rejected Rubbermaid's contentions, pointing out that no court had overturned the bankruptcy court's approval and confirmation of the amended agreement. The district court found that Coliseum was the current owner of the undercharge claims despite the bankruptcy court's dismissal of its actions against the shippers for lack of subject matter jurisdiction. The court also found that the 5% of net collected charges that Coliseum would receive established that Coliseum had a substantial interest in the litigation. In agreement with the bankruptcy court, the district court found that Coliseum's creditors would benefit from Coliseum's interest. These findings are amply supported by the evidence; they cannot be termed clearly erroneous.
 
 
 8
 Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." We have defined the real party in interest as "a person who possesses the right to enforce the claim and who has a significant interest in the litigation." Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir.1973). In the amended agreement the parties contemplated that Consolidated would conduct the day-to-day operations of auditing and collecting the claims as agent for Coliseum. Nevertheless, the agreement does not deny Coliseum its right to enforce collection of the undercharges it owns should Consolidated breach its duties as agent. Moreover, the agreement does not preclude Coliseum from collecting its 5% in separate proceedings should it elect to do so. In Virginia Elec. & Power Co. we observed that "Rule 17 will not bar a suit by a real party in interest which will have the effect of preventing a multiplicity of suits." 445 F.2d at 84. The presence of Coliseum will effectuate this purpose of the Rule. Joinder will also enable shippers to present readily any defense they have against Coliseum or its predecessors in the numerous actions that Coliseum and Consolidated have brought. The presentation of a defense against a party plaintiff is another function of the Rule 17. See Bartell v. Cohen, 445 F.2d 80, at 84 (7th Cir.1971).
 
 
 9
 In agreement with the district court, we hold that Coliseum has standing.
 
 III
 
 10
 Title 49 U.S.C. § 11706(a), on which Coliseum and Consolidated base their action for undercharges, has a three-year statute of limitations. Title 11 U.S.C. § 108(a) grants the trustee in bankruptcy a two-year extension of the limitation period, and 11 U.S.C. § 1107 accords a debtor-in-possession the rights and powers of a trustee.
 
 
 11
 Rubbermaid pled the three-year statute, which, if applicable, would bar collection of 85% of the undercharges. It relies primarily on the order of the bankruptcy court dismissing Coliseum's and Consolidated's adversary proceedings for lack of jurisdiction. Rubbermaid also contends that the undercharges are postpetition claims to which § 108(a) does not apply.
 
 
 12
 The district court held that Coliseum, as a debtor-in-possession, was entitled to the two-year extension of the statute of limitation that § 108(a) provides. Pointing out that the bankruptcy court's approval of the amended agreement had not been overruled, the district court gave full effect to this agreement. The district court found that Coliseum was the owner of the undercharge claims and that it had a substantial interest in the collection of the claims. Collection, the district court found, would advance public policy and the interest of the Bankruptcy Code by preserving and increasing the assets of the estate.
 
 
 13
 We find no error in the district court's findings of fact concerning Coliseum's ownership of the undercharges and its application of § 108(a) to Coliseum as the debtor-in-possession. Rubbermaid's major premise is that Coliseum conveyed all of its right, title, and interest in the undercharges to Consolidated by the initial agreement between the parties, and Coliseum's subsequent acquisition converted the charges to postpetition claims. This premise, however, overlooks the full effect of the amended agreement approved nunc pro tunc the date of the initial agreement. The amended agreement provides that the undercharges are reconveyed to Coliseum "as though no prior conveyance had ever been made." The undercharges were Coliseum's prepetition claims at the time Coliseum filed its petition in bankruptcy, and the amended agreement preserved their status. Furthermore, the amended agreement provided that as of the date of the initial agreement Consolidated was not the owner of the undercharges involved in this action; it was Coliseum's agent for the collection of the undercharges. A collection agent acting on behalf of a trustee in bankruptcy can invoke the benefits of § 108(a). Motor Carrier Audit & Collection Co. v. Lighting Prods., Inc., 113 B.R. 424, 426 (N.D.Ill.1989). In view of the powers conferred on a debtor-in-possession by 11 U.S.C. § 1107, the debtor-in-possession can employ an agent who can invoke the benefits of § 108(a) to the same extent as an agent acting for a trustee.
 
 
 14
 In sum, we hold that Coliseum, debtor-in-possession and owner of the claims for undercharges, and Consolidated, Coliseum's collection agent, can invoke § 108(a) to extend the statute of limitations. Consequently, we affirm the district court's entry of judgment in the amount of the stipulated damages.
 
 
 15
 As an alternative ground for judgment, the district court held that Consolidated, as assignee of Coliseum, could invoke § 108(a). Although the parties have briefed this aspect of the case, we find no need to address it in view of our affirmance of the district court's primary reason for entering judgment.
 
 IV
 
 16
 The district court declined to award prejudgment interest because Coliseum had failed to revise its tariff and to bill Rubbermaid at lawful rates. In their cross-appeal Coliseum and Consolidated assign error to the denial of this interest.
 
 
 17
 Ordinarily, when a statute is silent, the issue of prejudgment interest is committed to the sound discretion of the trial court and its refusal to make such an award will be upset only upon a showing of abuse of that discretion. See, e.g., Whitfield v. Lindemann, 853 F.2d 1298, 1306 (5th Cir.1988); United States v. Imperial Food Imports, 834 F.2d 1013, 1016 (Fed.Cir.1987). This general principle, however, does not apply to actions brought to recover undercharges or overcharges for shipment of freight subject to the Interstate Commerce Act.
 
 
 18
 We have held that shippers are entitled to prejudgment interest on overcharges by carriers. Fawley Motor Lines v. Cavalier Poultry Corp., 235 F.2d 416, 419 (4th Cir.1956); accord Garrett v. Time-D.C., Inc., 502 F.2d 627, 629-30 & n. 5 (9th Cir.1974). Such interest is mandatory, as well, when a carrier recovers undercharges. Louisiana & Ark. Ry. Co. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir.1966) (citing Fawley). A carrier must pay prejudgment interest even when the shipper had previously consented to a suspension of refunds of overcharges. Chesapeake & Ohio Ry. Co. v. United States Steel Corp., 878 F.2d 686, 691-92 (3d Cir.1989). The congressional policy embodied in the Act means that prejudgment interest on undercharge claims is mandatory even when the carrier "should have detected the undercharges much sooner." Consolidated Rail Corp. v. Certainteed Corp., 835 F.2d 474, 478 (3d Cir.1987). "Waiver of prejudgment interest would confer on those who delay payment of the balance due an advantage over shippers who meet their obligations promptly. In effect undercharges would afford a delinquent shipper an interest-free loan from the carrier." Consolidated Rail, 835 F.2d at 478. "To allow the [carrier] to recover without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the value of the use of the money owed for the period prior to judgment." Southern Pac. Co. v. Miller Abattoir Co., 454 F.2d 357, 362 (3d Cir.1972) (citing Fawley); see also Consolidated Rail, 835 F.2d at 478-79. In concert with these cases, we hold that the policy of the Act requires an award of prejudgment interest, even though the district court considered the equities to favor Rubbermaid. To effectuate the policy of the Act, the Supreme Court has forbidden "equitable defense to collection of the filed tariff." Maislin, 497 U.S. at 121, 110 S.Ct. at 2766. For the same reason equitable defenses do not bar award of prejudgment interest. See Consolidated Rail, 835 F.2d at 478.
 
 
 19
 The district court's order holding Rubbermaid liable for the undercharge claims is affirmed. The court's order denying interest is vacated, and the cause is remanded to the district court for entry of an order awarding suitable prejudgment interest.
 
 
 20
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 WILKINSON, Circuit Judge, dissenting:
 
 21
 I disagree with the majority's conclusion that the reconveyance of the accounts receivable by Consolidated to Coliseum Cartage allows Coliseum as a debtor-in-possession to use § 108(a) to extend the time period in which an action to recover the freight undercharges may be brought. The majority's result cannot be squared with the basic aims of bankruptcy law--aims that are embodied in the plain language of the statute.
 
 
 22
 The issue in this case arises from the intersection of two bedrock principles of bankruptcy. The first principle is that filing for bankruptcy acts as a "time-out" for the debtor or the trustee, stopping the clock running against him. This applies to actions brought against the debtor, see 11 U.S.C. § 362 (automatic stay), as well as to actions brought by the trustee or debtor-in-possession, see 11 U.S.C. § 108(a); 11 U.S.C. § 1107 (granting debtor-in-possession the rights and powers of trustee). Section 108(a) grants the debtor-in-possession or the trustee time to evaluate claims held by the estate and to sort out the affairs of the estate in an orderly fashion. See H.Rep. No. 595, 95th Cong., 1st Sess. 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6275. This reprieve from the statute of limitations clock is especially important where the management of a business has allowed matters to slide as the business entered its downward spiral. Management may not have adequate incentives to bring lawsuits in a timely fashion when it expects the recovery to be delayed and the benefits to accrue to creditors rather than shareholders. Section 108(a) allows the trustee to counteract the possibility that management was not adequately serving the creditors' interests in the period before filing.
 
 
 23
 The second principle, ignored by the majority, is that the debtor must do business post-petition on the same terms as solvent businesses, with no bankruptcy subsidy. See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). The protection of the bankruptcy code is not intended to subsidize business failures. Debtors continuing to do business under the protection of the bankruptcy court must obey the criminal laws, 11 U.S.C. § 362(b)(1), pay taxes, 28 U.S.C. § 960, comply with regulations, 28 U.S.C. § 959--and bring suits within the time periods specified by statutes of limitations. Subsidizing debtors in bankruptcy will only disadvantage solvent firms and encourage wasteful forum-shopping as debtors and creditors seek to gain the benefits of the bankruptcy court.
 
 
 24
 The decision of the majority moves beyond the time-out authorized by § 108(a) and into the forbidden ground of subsidy. The language of § 108(a) makes clear that its time extension is only available for claims arising pre-petition. That section by its terms applies only when the statute of limitations on a bankrupt's claim "has not expired before the date of the filing of the petition ..." (emphasis added). The time extension is simply unavailable for claims obtained by the estate post-petition. 2 Collier on Bankruptcy p 108.02 (Supp.1992); see, e.g., Independent Fire Ins. Co. v. Pender (In re Phillip), 948 F.2d 985, 987 (5th Cir.1991). The amended agreement, dated November 1, 1987, clearly transferred any interest that Coliseum now has after the date of the filing of the petition (July 9, 1986).
 
 
 25
 The majority asserts that the amended agreement "preserved" the status of the undercharges as Coliseum claims, but there was nothing left to preserve. According to the terms of the 1986 purchase agreement between Coliseum and Consolidated, Coliseum relinquished all "right, title and interest" in the accounts receivable covering the freight undercharges. Coliseum retained nothing. Up until the time of that agreement, Coliseum was entitled to the extension of the statute of limitations provided by § 108(a). At the point the claims were sold, the purposes of § 108(a) had been completely served. Coliseum had the opportunity to evaluate the merits of its claims and had determined that its best course was to sell the accounts receivable, for which it received one hundred and thirty thousand dollars. This breathing room was all that § 108(a) was intended to confer. Once the sale was complete, Coliseum no longer had any cause of action to bring on these undercharges and the § 108(a) extension was irretrievably lost.
 
 
 26
 The amended agreement purports to reconvey the claims to Coliseum "as though no prior conveyance had ever been made," but the reconveyance of the accounts receivable to Coliseum in 1987 could not and did not resuscitate the § 108(a) extension. Outside of bankruptcy, Consolidated would have taken the accounts receivable subject to the applicable statute of limitations; it should not receive a bonus because Coliseum is in bankruptcy. Moreover, Coliseum was required to conduct its business post-petition on the same terms as solvent businesses. No one would dispute that Coliseum could not take the benefit of § 108(a) if in the post-petition period it had been assigned a promissory note whose holder had allowed the applicable statute of limitations to expire; this would be an obvious subsidy to the debtor. The majority fails to recognize that the collusive 1987 agreement between Consolidated and Coliseum seeks to accomplish an equivalent feat.
 
 
 27
 The ex parte approval of the bankruptcy court does not save this agreement. The bankruptcy court specifically found that the agreement was a collusive attempt to manufacture subject matter jurisdiction. That court concluded:
 
 
 28
 The November 10, 1986 sale of the Debtor's undercharge claims to Consolidated/Mark was a final and absolute sale. Upon completion of the sale, the Bankruptcy Court no longer had jurisdiction over the undercharge claims or over the proceedings to collect such claims. As of November 10, 1986 the undercharge claims were no longer property of the Debtor's estate. (emphasis added).
 
 
 29
 Given the bankruptcy court's conclusion that it had no jurisdiction over the undercharge claims at the time of the amended agreement, the amended agreement, and that court's approval, had no effect whatsoever.
 
 
 30
 The majority's position means that a cause of action involving a bankrupt is, like the proverbial cat, to have nine lives. Through collusive arrangements, a cause of action for which the statute of limitations has expired may be magically restored to life by allocating to a bankrupt some minimal interest in the subject matter of the litigation. This sort of alteration of the statutory scheme must be left to Congress. The statutory framework should have been clear to Consolidated in 1986 when it agreed to an outright purchase of the accounts receivable. Had Consolidated initially assumed the role of Coliseum's collection agent instead of purchasing the relevant accounts, the § 108(a) extension would have remained in effect, and the problem of the expired statute of limitations would never have arisen. The majority manipulates the statute in order to correct Consolidated's mistake, and in the process, confers upon itself the clear prerogatives of Congress.
 
 
 31
 I would reverse the judgment of the district court and hold that plaintiffs' action for the disputed undercharges was time barred.